IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No.: GJH-11-552 |
| CHARLES JEROME JOHNSON, | |
| Defendant-Petitioner. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Pursuant to 28 U.S.C. § 2255, Charles Jerome Johnson has requested that the Court vacate his conviction and/or sentence on the basis of ineffective assistance of counsel. ECF No. 89 at 1.[1] According to Johnson, he would have accepted the government's plea offer of thirty-six months but for his former counsel, Robert C. Bonsib, leading Johnson to believe he had a defense against the charges, drastically understating the penalty Johnson would receive if convicted at trial, and failing to advise Johnson to take the plea offer of thirty-six months. ECF No. 89 at 3. Johnson asserts Bonsib should have "directly and specifically advised" that there was no possible defense to the charges and that Johnson "absolutely should" accept the plea agreement of thirty-six months. ECF No. 106 at 2. A hearing is unnecessary. Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, Johnson's Motion to Vacate Conviction and Sentence is DENIED.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

I.  **BACKGROUND**

   **A. Procedural History**

On May 23, 2012, the Government filed a superseding indictment charging Johnson with receiving and possessing child pornography in violation of 18 U.S.C. § 2252A. ECF No. 24 at 1. Specifically, Count One charged Johnson with knowingly receiving child pornography and materials that contained child pornography on April 15, 2011, in violation of 18 U.S.C. § 2252A(a)(2), ECF No. 24 at 1, and Count Two charged Johnson with knowingly possessing any material that contained an image of child pornography on May 17, 2011, in violation of 18 U.S.C. § 2252A(a)(5)(B), ECF No. 24 at 2. Johnson, who was represented by Bonsib from his Initial Appearance on October 13, 2011 until August 8, 2012, ECF Nos. 8, 70,[2] pleaded not guilty and the matter proceeded to trial, ECF No. 89 at 2.

After the three day trial concluded on June 14, 2012, ECF No. 48, the jury found Johnson guilty on both counts, ECF No. 53. On November 14, 2012, Judge Williams sentenced Johnson, who was then represented by Matthew Kaiser, to a term of ninety-six months. ECF No. 73. On September 4, 2014, Johnson filed this motion, requesting that the Court vacate "his convictions and direct the Government to re-offer its pre-trial plea deal so that Mr. Johnson may be re-sentenced as if he had pleaded guilty and agreed to fully admit his offense conduct instead of proceeding to trial." ECF No. 89 at 4. The Court directed the government to file a response, ECF No. 92, which was filed on May 11, 2015, ECF No. 102.

   **B. Johnson's Affidavit**

Johnson submitted an affidavit in support of his motion. According to Johnson, shortly after a search warrant was executed at Johnson's home, Johnson retained the services of Bonsib,

---

[2] Mr. Bonsib submitted his Motion to Strike Appearance on August 8, 2012, after the appearance of Matthew G. Kaiser on August 6, 2012. ECF Nos. 62, 63.

2

who had "more than 30 years of experience practicing law in the Greenbelt, Maryland area" and "was experienced in cases where defendants had been charged with using a computer to illegally obtain[] child pornography." *Id.* ¶ 3. Johnson explained that he viewed pornographic images of children because he was writing a book, and never purposely saved images to his computer's hard drive. *Id.* ¶ 4.

Bonsib advised Johnson that cases like Johnson's case are difficult to defend and showed Johnson a case to demonstrate how sentences were calculated, but Bonsib never explained how Johnson's sentence would be calculated. *Id.* ¶ 5. Bonsib also advised Johnson that "being convicted at trial would not necessarily lead to [a] harsher sentence" and that Johnson would receive "around (or near) the minimum of 60 months imprisonment" if he lost at trial. *Id.* Bonsib communicated the Government's plea offer to Johnson, explaining that the offer was a sentence of thirty-six months imprisonment with no further reduction, but he did not discuss "the advantages and disadvantages of pleading guilty versus going to trial" nor advise Johnson to take the plea. *Id.* ¶ 6. Johnson did not know that he was facing a potential sentence of 121 to 151 months if he rejected the plea offer. *Id.* ¶ 10.

In mid-December 2011, Bonsib provided Johnson with approximately twenty different judicial opinions that ruled on facts similar to Johnson's case in which "the defendants were successful at trial or appeal because the defendants had viewed on the computer, but not saved, child pornography." *Id.* ¶ 7. Just prior to the start of trial, Bonsib told Johnson for the first time that the images Johnson saved to a Microsoft Word document demonstrated that he exercised dominion and control over the images on his computer. *Id.* ¶ 8.

### C. Bonsib's Affidavit

The government submitted an affidavit from Bonsib in support of its opposition. In Bonsib's affidavit, he states that he had a number of conferences with Johnson and "spent many hours discussing the issues of his case, including discussing possible legal and factual defenses and how best to present his position regarding the allegations brought against him in this matter." ECF No. 101. They also discussed what defenses Johnson "might offer, his potential testimony before the jury and how he should best present his defense and his own testimony, should he have decided to testify in his own defense." *Id.* Shortly before trial, the Government filed "a motion *in limine* that was eventually granted by the Court and had the effect of essentially 'gutting' the substance of what Mr. Johnson wanted to present, through his testimony, to the jury." *Id.*

Despite Bonsib advising Johnson that "the likelihood of a successful outcome after trial was slight," Johnson consistently and without exception expressed that he would not accept any plea agreement "that exposed him to the possibility of incarceration or involved the requirement of registration on the Sexual Offender Registry" *Id.* The Government offered a plea that would have required Johnson to agree to a thirty-six month term of imprisonment and Johnson was fully advised of the possibility of resolving his case on those terms. *Id.* However, Johnson maintained that he would not accept a plea irrespective of whether the risk of post-trial sentencing was "3 years, 5 years or 15 years, or any period of incarceration." *Id.*

In support of his affidavit, Bonsib attached memoranda that summarized some of his interactions with Johnson. ECF No. 101, Ex. 1. The memoranda detail Bonsib's repeated attempts to explain to Johnson that he would likely be convicted at trial and Johnson's firmness regarding not accepting any plea that included incarceration. Bonsib also attached a statement

4

and an email from Johnson that expressed Johnson's insistence on not accepting any plea that included incarceration and acknowledged that defendants in similar circumstances "are almost always convicted." ECF No. 101, Ex. 2.

## II. DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner in custody "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 18 U.S.C. § 2255(a) (2012). A petitioner may bring a § 2255 motion on the basis that the petitioner was denied his "Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). During the plea-bargaining process, defendants are "'entitled to the effective assistance of competent counsel.'" *Id.* To determine if a petitioner's sentence should be amended based on ineffective assistance of counsel during plea-bargaining, courts apply the two-part test enumerated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* (Noting that the "*Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'").

The first part of the *Strickland* test requires the defendant to "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance must have fallen "below an objective standard of reasonableness.'" *Lafler*, 132 S. Ct. at 1384; *see also Strickland*, 466 U.S. at 687 ("[T]he proper standard for attorney performance is that of reasonably effective assistance."). It is not enough to establish that the performance "deviated

from best practices of most common custom." *Harrington v. Richter*, 562 U.S. 86, 88 (2011). Instead, the performance must amount to "incompetence under prevailing professional norms." *Id.* "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Next, the petitioner "must show that the deficient performance prejudiced the defense." *Id.* at 687. Establishing prejudice requires a showing that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384 (citations omitted). In instances in which "a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

"Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. Accordingly, the Court "need not address both components if one is dispositive." *Wilson v. United States*, No. ELH-10-0488, 2016 U.S. Dist. LEXIS 46313, at *32 (D. Md. 2016) (citing *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015)).

### B. An Evidentiary Hearing is Unnecessary

Under § 2255(b), an evidentiary hearing "is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue." *United States v. Ray*, 547 F. App'x 343,

345 (4th Cir. 2013); *see* 28 U.S.C. § 2255(b). However, an evidentiary hearing is unnecessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Lopez*, 570 F. App'x 291, 292 (4th Cir. 2014) ("An evidentiary hearing is required 'unless the motion and the files and records of the case conclusively show that the movant is entitled to no relief.'").

Here, a credibility determination is unnecessary because, while Johnson contends he received ineffective assistance, in his reply memorandum, he does not dispute the veracity of the affidavit and records submitted by Bonsib. ECF No. 106 at 2 ("Mr. Johnson does not dispute the statements made by Attorney Bonsib in his affidavit, and appreciates Attorney Bonsib's candor in providing the affidavit and work materials."). *See United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) ("Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing."). As discussed below, the affidavits submitted by Johnson and Bonsib, along with the records attached to Bonsib's affidavit, establish that Bonsib provided effective assistance of counsel and that Johnson was not prejudiced.

### C. Bonsib's Performance was Reasonable

1. <u>Bonsib gave Johnson sound advice regarding Johnson's chances at trial.</u>

The affidavits and records indicate that Bonsib repeatedly communicated to Johnson that he was almost certain to lose at trial. While Johnson generally states that Bonsib led Johnson to believe that a legitimate defense existed and the government had a weak case, ECF No. 89-1 ¶ 10, Bonsib notes that he advised Johnson that "the likelihood of a successful outcome after trial was slight," ECF No. 101. On November 22, 2011, about a month after Johnson hired Bonsib, Bonsib explained to Johnson that cases in which defendants successfully raised a similar defense "could be distinguished based upon the specifics of the State's statutes." ECF No. 101, Ex. 1

(Nov. 22, 2011).[3] Shortly before the May 23, 2012 Superseding Indictment, Bonsib showed Johnson cases from the Fourth Circuit that indicated that Johnson's defense that he viewed the material while doing research did not authorize the possession of child pornography. ECF No. 101, Ex. 1 (May 15, 2012). Bonsib noted that at the conclusion of their May 15, 2012 meeting, "Johnson seemed to be accepting of the fact that this was a very difficult position he was in, that we did not have a real viable defense and that he was likely to be convicted in this matter." ECF No. 101, Ex. 1 (May 15, 2012). Rather than believing that there was a legitimate case, Johnson knew before the Superseding Indictment that there was no "real affirmative defense." ECF 101, Ex. 1 (May 17, 2012); *see also* ECF No. 89-1 ¶ 5 ("He advised me that cases like mine are difficult to defend. Early in discussions, Attorney Bonsib showed me one of his cases to demonstrate how sentences and enhancements were calculated.").

While not challenging the facts presented by Bonsib, Johnson contends that this was ineffective assistance of counsel because Bonsib should have advised Johnson that there was absolutely no chance of acquittal. ECF No. 106 at 3 ("Counsel's advice – that a 'slight' possibility of an acquittal existed – was plainly incorrect because, barring something extraordinary, such as juror nullification, absolutely no possibility of an acquittal existed."). Johnson provides no authority for the proposition that Bonsib's alleged failure to use absolutes when predicting the outlook for trial renders him ineffective and the Court will not impose such a standard. As Johnson concedes, ECF No. 89 at 5 (noting that Bonsib advised Johnson that it "would be extremely difficult to win at trial"), Bonsib and Johnson discussed that "there was at least a 99% chance he would be convicted" and his chance of success was "slim to none," ECF No. 101, Ex. 1 (May 17, 2012). Even if a court were to find error – and this Court does not – in

---

[3] The dates provided by the Court correspond to the date of the Memorandum included in Exhibit 1 of Bonsib's affidavit.

advising a client that his chances of acquittal were slight rather than non-existent "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Lafler*, 132 S. Ct. at 1391. This Court finds that such an assessment was reasonable and that Bonsib provided Johnson with effective assistance of counsel as it related to Johnson's likelihood of success at trial.

Johnson also belabors the idea that Bonsib did not communicate Johnson's chances of success until the eve of trial. *See* ECF No. 89-1 ¶ 8 ("It was not until just prior to the start of trial that Attorney Bonsib told me for the first time that . . . I had exercised dominion and control over the images on my computer."); ECF No. 106 at 3 ("However, it was not until May 15, 2012, that Attorney Bonsib first advised Mr. Johnson of cases showing that the fact he was engaging in research does not authorize the possession of child pornography."). If Bonsib did reserve a more accurate prediction until shortly before trial, it could be reasonably attributed to the Government filing "a motion *in limine* that was eventually granted by the Court and had the effect of essentially 'gutting' the substance of what Mr. Johnson wanted to present, through his testimony, to the jury." ECF No. 101. Adjusting his prediction after receiving a significant ruling from the Court does not fall outside of the wide range of reasonable professional assistance. *United States v. Ray*, 547 F. App'x 343, 345 (4th Cir. 2013) ("'Courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance in order to avoid the distorting effects of hindsight.'").

2. Bonsib's competently advised Johnson regarding his plea options.

As a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri*, 132 S. Ct. at 1408. Counsel is "required to be a 'reasonably effective advocate' regarding the decision to seek a plea bargain." *United States v. Pender*, 514 F. App'x 359, 361

9

(4th Cir. 2013) (quoting *Brown v. Doe*, 2 F.3d 1236, 1246 (2d Cir. 1993)). Here, it is clear that Bonsib and Johnson had multiple discussions regarding the plea and whether Johnson should accept it.

Outside of stating that the plea called for a possible three years in prison with no further reduction, Johnson asserts that counsel provided no advice concerning the advantages or disadvantages of the plea offer. ECF No. 89 at 28. However, Johnson acknowledges that "each time the possibility of a plea was discussed, he told Attorney Bonsib that he did not want to plea[d] guilty." ECF No. 106 at 8. Johnson also acknowledges that he was "advised of the statutory minimum and maximum penalties that existed in his case." ECF No. 106 at 6. Additionally, Bonsib noted having multiple discussions with Johnson and trying to convince him of the probable outcome of his case, with Johnson making "clear that anything that resulted in jail time and registration was unacceptable and he viewed [that as] the end of his 'meaningful life' and therefore he would not consider any agreement that involved registration or the possibility of jail an acceptable option." ECF No. 101, Ex. 1 (May 17, 2012); *see also* ECF No. 101, Ex. 1 (June 8, 2012) ("He has repeatedly expressed to me his decision that he does not want to plead guilty to possession unless he does not go to jail and unless he would not be on the sex offender registry. I told him that those are two impossible conditions. As a result, he has insisted that he wishes to go to trial in this matter despite what he has characterized as having less than a one percent chance of success.").

Considering Johnson's strong desire to avoid jail time and placement on the Sexual Offender Registry, it is reasonable that Bonsib did not advise Johnson that he should accept the plea offer of thirty-six months. In a March 21, 2012 email to Bonsib, Johnson stated, "[a]s you know I am not interested in a plea agreement, as I want to go to trial with a sound strategy and

strong defense." ECF No. 101, Ex. 2 (emphasis in original). On May 13, 2012, Johnson confirmed that he is not interested in a plea because "his life as he knows it – re child and wife – are in the balance – and he has concluded no effective difference between 3 years and facing 5 years or more and wants a trial." ECF No. 101, Ex. 1 (May 13, 2012). Based on Johnson's decision to reject any offer that included a period of incarceration and placement on the Sexual Offender Registry, it would have been against his client's wishes for Bonsib to advise Johnson that he should accept the plea offer. As noted by the Supreme Court, the "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 691. The Court does not find that Bonsib's assistance regarding the plea offer was incompetent under prevailing professional norms. *Harrington*, 562 U.S. at 88.

Johnson additionally claims that Bonsib was ineffective for not telling him that he was facing a sentencing range of 121-151 months after trial. As an initial matter, it is worth noting that Johnson was sentenced to a period of incarceration, 96 months, that is considerably below that range. Second, although the record does not make clear if Bonsib correctly calculated Johnson's likely post-trial guidelines range, Johnson acknowledges that he was advised of the maximum penalty he faced. Finally, even if Bonsib failed to provide Johnson with an accurate calculation of his post-trial sentencing guideline, for the reasons discussed below, the defendant was not prejudiced.

### D. Johnson was Not Prejudiced

To establish that he was prejudiced, Johnson must show that:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant

11

would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385. The record demonstrates that Johnson was not prejudiced because he was unwilling to accept a plea despite it being available until the commencement of trial.

Although Johnson insists that he would have accepted the thirty-six month plea offer if he were told that he faced 121 to 151 months if convicted, ECF No. 89-1 ¶ 11, this assertion cannot be credited because of Johnson's insistence in the records that he would not accept any plea offer that included jail time. *See Merzbacher v. Shearin*, 706 F.3d 356, 366–67 (4th Cir. 2013) ("[T]o demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible."); *id.* at 367 (stating that defendant's self-serving assertion that he would have accepted the plea is the type of testimony subject to heavy skepticism). On November 11, 2011, Johnson prepared a statement that included the following:

> Almost everything I have been told and read on the subject of internet child pornography indicates defendants <u>are almost always convicted and likely to spend the mandatory 5+ years in prison</u>. This outcome would be 'unbearable' to me as it would destroy my family – everything really important to me – and overwhelmingly the most important reason for my rehabilitation (if that's the right term).

ECF No. 101, Ex. 2 (emphasis in original). Despite being aware of the likelihood of conviction and of a sentence greater than five years, Johnson continued "to assert that he has nothing to lose by going to trial and that he would not plead guilty to anything in this case." ECF No. 1, Ex. 1 (June 8, 2012).

Johnson does not deny Bonsib's note on June 8, 2012 that Johnson "made clear that he still had no interest in the governments plea offer" and felt that "3 or 5 or 15 years is all the same to him because if he gets convicted then he will go to jail, lose his family and everything that is

12

important to him." ECF No. 101, Ex. 1 (June 8, 2012); *see also* ECF No. 106 at 5. Based on Johnson's statements and the uncontested record and affidavit submitted by Bonsib, even if the Court found that Bonsib failed to provide competent representation, which it does not, Johnson was not prejudiced because he was unwilling to accept any plea offer regardless of the risk of sentencing after trial. *United States v. Merritt*, 102 F. App'x 303, 307 (4th Cir. 2004) ("Accordingly, our inquiry requires a determination of whether [defendant] has shown that his trial counsel provided him gross misadvice regarding his sentencing exposure, and, if so, whether but for this gross misadvice, there is a reasonable probability that [defendant] would have accepted the plea agreement specifying a sentence of eighteen months' imprisonment.").

## III. CONCLUSION

For the reasons stated above, the Court will DENY Johnson's Motion to Vacate Conviction and Sentence Under 28 U.S.C. § 2255 (ECF No. 89). A separate Order follows.

Dated: August 18, 2016

GEORGE J. HAZEL
United States District Judge